## EX PARTE JOHNSON.

### GIBBES v. RAILROAD COMPANY.

### STATE, *EX RELATIONE* ATTORNEY-GENERAL, v. SAME.

1. Findings of fact by master and Circuit judge sustained.
    . In action against the receiver of a railroad company for damages for the death of a fireman caused by the explosion of an engine, the Circuit judge

correctly ruled that "the measure of the receiver's duty was the exercise of ordinary care in the selection of machinery," &c.

3. The decision in *Gunter* v. *Graniteville Manufacturing Company*, 18 *S. C.* 262, stated.

Before WITHERSPOON, J., Richland, July, 1882.

The case is thus stated in the Circuit decree:

On November 17th, 1879, a locomotive engine of the Greenville and Columbia Railroad Company, called No. 21 or Chatooga, attached to a material train, exploded, so severely injuring the engineer, William E. Milligan, William Johnson, the fireman, and Henry Toliver, a train hand, that they each died very soon thereafter from the effects of said injuries. At the time of the explosion the Greenville and Columbia Railroad was in the custody and control of James Conner, who had been appointed by the court receiver of said road. The deceased parties were employes of the said James Conner as receiver.

Mary Johnson, as administratrix of William Johnson, the deceased fireman, by leave of the court filed her petition in this cause, alleging that her intestate came to his death as an employe of James Conner, receiver, through the carelessness, negligence and fault of the said James Conner, receiver, and that she, as administratrix aforesaid, is entitled to recover $5,000 damages. The petition was amended so as to allege the incompetence of William E. Milligan, the engineer.

It was referred to N. B. Barnwell, master, " to hear and determine all issues of law and fact arising upon the pleadings." On May 4th, 1882, the master filed his report, in which he concludes and finds as matter of law and fact, that the petition herein should be dismissed. Mary Johnson, administratrix, excepts to the report of the master, and the cause has been heard by me on said exceptions.

The relation of master and servant having existed, it is proper to consider some of the duties, obligations and liabilities that are incident to this relation. The master is bound to the exercise of reasonable care in reference to all the appliances of his business and to protect his servant from injuries by reason of latent or unseen defects, so far as human care and foresight can reasonably

accomplish that result. He is bound to the exercise of ordinary care in the selection of competent servants, to see that they continue to be competent during their retention in service, and to see that the machinery originally suitable for the work is kept in proper repair. The measure of the master's duty and liability to his servant is ordinary reasonable care, having reference to the business in which his servants are employed. The master cannot be held liable unless the injury is the result of his fault or negligence.

In an employment where dangerous machinery is used, the servant knows, or is bound to know, that there may be latent defects in such machinery that ordinary care upon the part of the master would not detect, and from such latent defects injuries may occur to him which are to be regarded in law as unavoidable and as risks assumed by the servant as incident to the employment. Before the servant can recover for injuries occasioned by defective or unsuitable machinery, it must appear that the machinery was in fact defective, that the injury was occasioned by such defect, and that the master had notice of the defect, or would have known of it if he had exercised ordinary care. *Wood M. & S.* 743. The burden of proving negligence is on the servant, as the master is presumed to have discharged his duty and obligations to the servant. Did the master err in concluding that Milligan was a competent engineer? [Here follows a statement of the evidence.] From the testimony I must concur with the master, as a matter of fact, that Milligan was a competent engineer.

Was the explosion the result of a defect in the engine, or was it occasioned by the tying down of the safety valve? [Here follows a further statement of the evidence.] From the testimony I conclude that the explosion resulted from the carelessness of the engineer in tying down the safety valve, and not from the defective or unsafe condition of the engine.

The employe assumes the risks incident to his employment, one of which is the negligence of his fellow-servant. This is implied in the contract between the parties. Such has been the law in this State from *Murray* v. *South Carolina Railroad*, 1 *McMull.* 385, to the recent case of *Gunter* v. *Graniteville Man-*

*ufacturing Company,* 15 *S. C.* 444. It does not satisfactorily appear from the evidence that at the time of the explosion the engine was unsafe or defective. On the contrary, it appears from the testimony that the engine had but recently been overhauled, repaired and put in good order by competent machinists. The engine had been personally tested by the master-mechanic before being put to service after repairing; with a view to safety the balances were adjusted so that the engine would relieve herself at the pressure to which she was limited by instructions.

Whilst it appears from the testimony that before being overhauled and repaired there was some apprehension among the employes as to the safety of the engine in consequence of her age, and from the fact that an engine of the same make had, several years before, exploded on the road, yet there is no evidence of any objection to the engine after she was overhauled and repaired, or of any notice thereof to the receiver, nor could he reasonably know of any defect. It does not appear to me, from the evidence, that the receiver failed to exercise ordinary care in the selection and superintendence of his operatives and machinery. I cannot conclude, from the testimony, that the petitioner's intestate came to his death in consequence of the carelessness or negligence of James Conner, receiver, and must, therefore, concur in the conclusions reached by the master.

I conclude as matter of fact: 1. That petitioner's intestate, William Johnson, was a fellow-servant with William E. Milligan in the employ of James Conner, receiver; 2. That William E. Milligan was a competent engineer; 3. That James Conner, receiver, exercised ordinary care in the selection and repairs of the engine, No. 21 (Chatooga), as well as in the selection and superintendence of competent employes to operate and repair said engine; 4. That the explosion of the engine No. 21 (Chatooga) was not the result of carelessness or negligence on the part of James Conner, receiver.

I conclude as matter of law: That the petitioner is not entitled to recover damages against James Conner, receiver, on account of the death of her intestate, William Johnson. It is, therefore, ordered and adjudged that the petition of Mary Johnson, administratrix, be dismissed with costs.

From this decree the petitioner appealed to this court.

*Messrs. J. T. Sloan, Jr.,* and *W. H. Lyles,* for appellant.

*Messrs. Conner & Cheves,* contra.

July 4th, 1883.   The opinion of the court was delivered by
Mr. Justice McIver.   This is a petition in the causes
above stated, asking leave to bring an action against the receiver
of the Greenville and Columbia Railroad Company to recover
damages for the killing of petitioner's intestate, by the explo-
sion of a boiler on one of the locomotives used on said road,
which was alleged to be due to the negligence of the receiver in
supplying suitable machinery, &c., and in employing an incom-
petent engineer.   The receiver filed an answer denying the
allegations of the petition, pleading contributory negligence on
the part of the intestate, and resisting the prayer of the petition.
The Circuit Court refused to grant leave to sue the receiver in a
separate action, but referred it to the master " to hear and deter-
mine all issues of law and fact arising upon the pleadings."
To this action of the court there was no exception, and no appeal
has been taken therefrom.   On the contrary, the hearing before
the master was proceeded with without objection, and he made
his report, in which he finds, substantially, as matter of fact, that
the death of intestate was not due to any negligence on the part
of the receiver, and, as matter of law, that the petition be
dismissed.

To this report the petitioner filed sundry exceptions, and the
case came before the Circuit judge upon this report and the
exceptions thereto, and he, concurring in the views of the mas-
ter, rendered judgment dismissing the petition.   From this judg-
ment the petitioner appeals upon several grounds, all of which,
except the seventh (not to mention the eighth, which is of too
general a character to require notice,) raise simply questions of
fact.   As to these questions it is sufficient for us to say that we
are not only unable to discover any ground which, under the
well-settled rule of this court, would warrant us in disturbing
the finding of fact by the master, concurred in by the Circuit

judge, but, on the contrary, a careful examination of the testimony incorporated in the "Case" satisfies us that such findings are well supported by the evidence.

The seventh ground of appeal, which is the only one raising a question of law, is in the following words: "Because he (the Circuit judge) concluded, as matter of law, that the measure of the receiver's duty was the exercise of ordinary care in the selection of machinery, &c." We see no error in this. The receiver was not bound to exercise extraordinary care, and we do not know what terms the Circuit judge could have employed that would have more appropriately indicated the degree of care required of the receiver. The basis of the claim is the negligence of the receiver, and the definition of that term, as given by Wharton and approved by this court in *Gunter* v. *Graniteville Manufacturing Company*, 15 S. C. 450, necessarily implies that ordinary care is all that is required. *Wharton*, § 1, *p*. 1, says: "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under existing circumstances, would not have done, the essence of the fault being either in omission or commission." This is no more than saying that negligence is the want of ordinary care.

The appellant's counsel, in his argument, seems to contend that the true measure of liability is the want of "all reasonable and proper care," but we confess that the difference between those terms and the terms "ordinary care" appears to us inappreciable. Self-interest usually prompts those engaged in any enterprise to bestow upon it all reasonable and proper care, and hence the words "ordinary care" imply reasonable and proper care, inasmuch as that is the degree of care which we find that persons ordinarily bestow upon their affairs. The citation of the second decision in *Gunter* v. *Graniteville Manufacturing Company*, 18 S. C. 262, to sustain the view contended for by appellant betrays a misconception of that case. There the doctrine was distinctly recognized, that an employer was not bound to furnish the best and most approved machinery, but only such as a reasonable and prudent person would ordinarily have used under similar

2G

circumstances; that is, he must use ordinary care in the selection of his machinery, &c.

This doctrine is fully sustained by the authorities. As is said in 2 *Thomp. Negl.* 982, without citing others, in speaking of the duty of the employer in selecting and maintaining safe machinery and competent servants: "He is not an insurer of the safety of his servants in this respect. He does not warrant the competency of his servants or the sufficiency of his machinery. His duty to them is discharged by the exercise of reasonable or ordinary care."

The judgment of this court is that the judgment of the Circuit Court be affirmed.